**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-3138-WJM-KLM

AURORA COMMERCIAL CORP., as Successor by merger to
AURORA BANK FSB, f/k/a Lehman Brothers Bank, FSB

       Plaintiff,

v.

STANDARD PACIFIC MORTGAGE, INC., a Delaware Corporation
f/k/a FAMILY LENDING SERVICES, INC.,

       Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

---

      This is a breach of contract action brought by Plaintiff Aurora Commercial Corp.

("Plaintiff" or "ACC"), as successor in interest to Aurora Bank, FSB ("Aurora Bank"),

formerly known as Lehman Brothers Bank, FSB ("LBB"), against Standard Pacific

Mortgage, Inc. ("Defendant").  Plaintiff alleges Defendant breached certain

representations and warranties it made regarding mortgage loans it sold to LBB, and

that Defendant is obligated under a written contract to repurchase the loans.  Before this

Court is Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (the

"Motion").  (ECF No. 32.)  For the following reasons, Defendant's Motion is GRANTED.

**I.  BACKGROUND**

      On June 5, 2013, Aurora Bank merged with and into ACC.  (Compl. (ECF No. 31)

¶ 1.)  ACC is the surviving entity and successor to Aurora Bank.  (*Id.*)  ACC is

incorporated in and has its principal place of business in Delaware.  (*Id.* ¶ 4.)  Before its

merger into ACC, Aurora Bank, a federal savings bank formerly known as LBB, had its home office in Delaware and its principal place of business in New York.  (*Id.* ¶ 5.)

In 2004, Defendant and LBB entered into a Loan Purchase Agreement (the "Agreement") which provided for the purchase and sale of mortgage loans.  (*Id.* ¶ 12.) The Agreement expressly incorporated the additional terms found in the Aurora Loan Services Seller's Guide (the "Seller's Guide").  (*Id.* ¶ 13.)  The Agreement and the Seller's Guide (together, the "Purchase Agreement") set forth the obligations and duties of the parties with respect to the purchase and sale of mortgage loans, including, but not limited to, representations and warranties by Defendant regarding individual mortgage loans purchased or sold, and remedies for breach of those representations and warranties.  (*Id.* ¶ 14.)  The Purchase Agreement also provided that New York law shall apply.  (*Id.* ¶ 15.)

The Seller's Guide states that "[i]n the event of a breach of any of the representations, warranties or covenants contained in Section 700 through 710 herein, which breach materially and adversely affects the value of the Mortgage Loans or the interest of Purchaser, . . . Seller shall, at Purchaser's option, repurchase the related Mortgage Loan . . . at the Repurchase Price."  (ECF No. 47-1 at § 710.)  The Seller's Guide also states that "[a]ny such repurchase shall occur no later than thirty (30) days after the earlier of the date on which Purchaser notifies Seller of such breach or the date on which Seller knows of such breach."  (*Id.*)

Defendant sold numerous loans to LBB under the Purchase Agreement, including the ten loans at issue in Plaintiff's operative Complaint (the "Subject Loans"). (ECF No. 31-2.)  The Subject Loans were sold to LBB between December 2006 and

2

May 2007.  (*Id.*; ECF No. 32-2.)  On February 7, 2012, Plaintiff sent a written demand to Defendant for the repurchase of each of the Subject Loans, alleging that Defendant had breached certain representations and warranties in the Purchase Agreement.  (ECF No. 32-2.)

On these facts, Plaintiff filed this action against Defendant on November 30, 2013.  (ECF No. 1.)  On June 26, 2013, Plaintiff filed a Second Amended Complaint, asserting two claims: (1) breach of contract, and (2) breach of express warranty. (Compl. ¶¶ 27-40.)  Defendant moved to dismiss on July 15, 2013, arguing that Plaintiff's claims are time-barred.  (ECF No. 32.)  Plaintiff filed a Response to Defendant's Motion on September 3, 2013.  (ECF No. 47.)  Defendant filed its Reply on September 20, 2013.  (ECF No. 48.)

## I.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  In evaluating such a motion, a court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation marks omitted). "Thus, 'a

3

well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

"In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (internal citations omitted). "[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).[1]

### III.  ANALYSIS

Defendant moves for dismissal under Rule 12(b)(6), arguing that Plaintiff's Complaint is time-barred pursuant to Delaware's three-year statute of limitations for breach of contract actions.  (ECF No. 32 at 8, 9.)  Plaintiff argues that New York's six-year statute of limitations should be applied, making its claims timely.  (ECF No. 47 at 7.)

### A.    New York Borrowing Statute

There is no dispute that the Agreement and Seller's Guide are governed by New York law.  (ECF No. 32 at 4 ("The parties agree that the Agreement is governed by New York law.").)  What is in dispute is whether the New York "borrowing" statute should be applied in this case to determine which state's statute of limitations should be used.

---

[1]  The parties have submitted materials outside of the pleadings in support of or in opposition to the Motion.  Since the documents are referred to in the Complaint, are central to Plaintiff's claims, and there is no dispute over their authenticity, the Court declines to convert this Motion to one for summary judgment.

The New York borrowing statute provides that:

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

N.Y. Civ. Prac. Law and Rules ("CPLR") § 202.  "When a nonresident sues on a cause of action accruing outside New York, CPLR 202 requires the cause of action to be timely under the limitation periods of both New York and the jurisdiction where the cause of action accrued."  *Global Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 484 (N.Y. 1999).

Defendant argues that the borrowing statute applies because Plaintiff was a Delaware resident when its claims accrued, and therefore Plaintiff's claims accrued in Delaware.  (*Id.* at 6, 8.)  Defendant further argues that Plaintiff's claims are untimely since Delaware law imposes a three-year statute of limitations for breach of contract actions, and Plaintiff did not initiate this action until five years after the alleged breaches occurred.  (ECF No. 32 at 8, 9 (citing 10 Del. Code § 8106).)

Plaintiff argues that the borrowing statute is inapplicable, and that New York's six year statute of limitations should be applied, because: (1) the Purchase Agreement calls for New York law and remedies "without regard for the principles of conflicts of laws;" and (2) Plaintiff was a New York resident when the alleged breaches occurred.  The Court will take each of Plaintiff's arguments in turn.

In regards to Plaintiff's first argument, Plaintiff contends that by including a New York choice of law provision, the Purchase Agreement incorporated New York's six-year statute of limitations.  (ECF No. 47 at 5-7.)  Plaintiff further contends that by applying the borrowing statute, the Court would be engaging in a conflict-of-laws analysis despite the

parties' expressed desire to apply New York substantive law and remedies.  (*Id.*)

The Purchase Agreement provides that it "shall be construed in accordance with the substantive law of the State of New York and all the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such law without regard for the principles of conflict of laws."  (ECF No. 47-1 at § 713.1.)  The Court finds that the Purchase Agreement's choice of law clause does not necessitate applying New York's six-year statute of limitations.  "Choice of law provisions in contracts are generally understood to incorporate only substantive law, not procedural law such as statutes of limitation."  *Fed. Deposit Ins. Corp. v. Petersen*, 770 F.2d 141, 142 (10th Cir. 1985).  Here, the Purchase Agreement explicitly refers to "substantive law" and does not state an intention to include the New York statute of limitations into its provisions.  "Absent an express statement of intent, a standard choice of law provision such as this one will not be interpreted as covering a statute of limitations."  *Id.*; *see also Portfolio Recovery Assocs. v. King*, 927 N.E.2d 1059, 1061 (2010) ("Choice of law provisions typically apply to only substantive issues and statutes of limitations are considered 'procedural' because they are deemed as pertaining to the remedy rather than the right.") (internal citation omitted).

Additionally, applying the New York borrowing statute does not require the Court to engage in a conflict-of-law analysis.  "New York courts have confirmed clearly that the borrowing statute is a statute of limitation, not a choice-of-law provision."[2] *Lehman*

---

[2] "For this same reason, the doctrine of *renvoi* has no bearing on the application of New York's borrowing statute."  *Lehman Bros. Holdings, Inc. v. Universal Am. Mortg. Co.*, 2014 WL 292858, at *3 n.9 (D. Colo. Jan. 27, 2014) (citing *Baena v. Woori Bank*, 2006 WL 293572, at *7 (S.D.N.Y. Oct. 11, 2006); *see also Ledwith v. Sears Roebuck & Co., Inc.*, 660 N.Y.S.2d 402,

*Bros. Holdings, Inc. v. Universal Am. Mortg. Co.,* 2014 WL 292858, at *3 (D. Colo. Jan. 27, 2014); *See also Global Fin. Corp.*, 715 N.E.2d at 484 ("[T]here is a significant difference between a choice-of-law question, which is a matter of common law, and this Statute of Limitations issue, which is governed by particular terms of the CPLR."); *Ledwith*, 660 N.Y.S.2d at 406 ("[M]odern choice-of-law decisions are simply inapplicable to the question of statutory construction presented by CPLR 202."). Therefore, the Court finds that application of the borrowing statute is not foreclosed by the contract's choice-of-law provision.

As to Plaintiff's second argument, the Court must ascertain where Plaintiff was a resident when the causes of action accrued to determine whether the borrowing statute should be applied in this case. "For purposes of the New York borrowing statute, a cause of action accrues where the injury is sustained. In cases involving economic harm, that place is normally the state of plaintiff's residence." *Gorlin v. Bond Richman & Co.*, 706 F. Supp. 236, 240 (S.D.N.Y. 1989). "In the case of a corporate plaintiff, that may be the state of incorporation or its principal place of business." *Oxbow Calcining USA v. Am. Indus. Parters*, 948 N.Y.S.2d 24, 30 (N.Y. App. Div. 2012). Because Plaintiff was a federally chartered savings association, it was not incorporated under the laws of any state. *See Universal Am. Mortg. Co.*, 2014 WL 292858, at *4. Therefore, the borrowing statute only applies if Plaintiff's principal place of business was outside of

---

406 (N.Y. App. Div. 1997) ("[C]ourts have refused to apply *renvoi* . . . to circumvent CPLR 202."). Therefore, the Court need not consider Plaintiff's argument that applying the borrowing statute would invoke *renvoi.*

New York.

Plaintiff argues that since its principal place of business was located in New York at all relevant times, it was a resident of New York for the purposes of the borrowing statute.  (ECF Nos. 47 at 10-11; 47-3 ¶¶ 2-9.)  Plaintiff's argument overlooks the fact that as a federal savings association, its principal place of business "is the State in which the institution maintains its home office."  12 C.F.R. § 1263.18(b).  *See also* 12 C.F.R. § 561.39 ("The term principal office means the home office of a savings association . . . .").  Plaintiff's home office was in Delaware at all relevant times. (Compl. ¶ 5.)  Therefore, the borrowing statute applies and the Court must use the Delaware statute of limitations.  The statute of limitations for breach of contract under Delaware law is three years.  10 Del. Code § 8106.  Plaintiff purchased the Subject Loans in 2006 and 2007.  (ECF Nos. 1-2, 32-2.)  Plaintiff did not file its Complaint until 2012.  (ECF No. 1.)  Therefore, Plaintiff's claims are barred by Delaware's three-year statute of limitations.

## A.    Separate Breach

Even if a three-year statute of limitations applies, Plaintiff contends that its suit is timely because a separate, independent breach of contract occurred when Defendant failed to repurchase the Subject Loans within thirty days of Plaintiff's demand on February 7, 2012.  (ECF No. 47 at 16. (citing ECF No. 47-1 § 710).)  Plaintiff argues that the statute of limitations accrued in March 2012, rather than 2006, and that its breach of contract claims is therefore timely.  (*Id.* at 16, 18.)

Plaintiff's argument relies on a New York Appellate Division case holding that under New York law, a loan seller's failure to repurchase non-conforming loans upon

demand as required by a contract was an independent breach of the contract entitling the plaintiff to pursue general contract remedies for breach of contract. (ECF No. 47 at 16 (citing *Resolution Trust Corp. v. Key Fin. Servs.,* 280 F.3d 12, 16 (1st Cir. 2002)); *see also Lehman Bros. Holdings, Inc. v. Nat'l Bank of Ark.*, 875 F. Supp. 2d 911, 917 (D. Ark. 2012) (applying *Resolution Trust* to language identical to the Seller's Guide and finding that the statute of limitations began to run when the plaintiff sent a demand letter). Subsequent New York cases have held, however, that *Resolution Trust* "had nothing to do with the statute of limitations and does not hold that a failure to repurchase on demand constitutes an independent breach of contract." *Nomura Asset Acceptance Corp. Alternative Loan Trust, Series 2005-S4 ex rel. HSBC Bank USA, Nat. Ass'n v. Nomura Credit & Capital, Inc.*, 2013 WL 2072817, at *8 (N.Y. Sup. Ct. May 10, 2013).

Rather, the statute of limitations begins to run when a cause of action accrues. "In New York, a breach of contract cause of action accrues at the time of the breach." *Ely-Cruikshank Co. v. Bank of Montreal*, 615 N.E.2d 985, 986 (N.Y. 1993). Here, Plaintiff's cause of action accrued when Plaintiff possessed a "legal right to demand payment." *Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*, 967 N.E.2d 1187, 1190 (2012) ("A consistent line of Appellate Division precedent holds that, where the claim is for payment of a sum of money allegedly owed pursuant to a contract, the cause of action accrues when the [party making the claim] possesses a legal right to demand payment.") (internal citation omitted).

The first alleged breach of a representation or warranty occurred in December 2006 when the first Subject Loan was originated, thus triggering both Plaintiff's duty to

repurchase the Subject Loans and the running of the statute of limitations.  (*See* ECF Nos. 32-2; 47-1 at § 710 ("In the event of a breach of any of the representations, warranties, or covenants contained in Section 700 through 710 herein . . . [Defendant] shall, at [Plaintiff's] option, repurchase the related Mortgage Loan.").)  "[Plaintiff] may not extend the accrual date of the statute of limitations simply by delaying its demand for payment."  *Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*, 793 F. Supp. 2d 1189, 1194 (W.D. Wash. 2011).  "To find otherwise would allow [Plaintiff] to essentially circumvent the statute of limitations by indefinitely deferring its demand for payment."  *Id.; see also Hahn Auto. Warehouse*, 967 N.E.2d at 1191 (same). Therefore, the Court finds that Defendant's alleged failure to repurchase the Subject Loans did not constitute a new breach triggering a new statute of limitations period.

### IV. CONCLUSION

Accordingly, the Court ORDERS as follows:

1.  Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 32) is GRANTED and Plaintiff's claims are DISMISSED WITH PREJUDICE;

2.  The Clerk shall enter judgment and close the case.  Each party shall bear its own attorney's fees and costs.


Dated this 19th day of March, 2014.

BY THE COURT:

William J. Martínez
United States District Judge